**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| S.M.A., | Case No. 19-cv-689 (DWF/ECW) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| B. Birkholz, | |
| Respondent. | |

---

This matter is before the Court on S.M.A.'s ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1) ("Petition"); Petitioner's Motion for Summary Judgment (Dkt. 4); and Petitioner's Motion for Summary Judgment as a Matter of Default (Dkt. 6).  The Petition claims the United States Parole Commission's ("USPC") decision to deny him parole lacks justification and asks the Court to release him on parole.  The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that the Petition and Motions be denied.

## I.   BACKGROUND

**A.   Petitioner's Underlying Crimes and Sentence**

On June 4, 1987, Petitioner forced his way into a private home occupied only by two children.  (Dkt. 12-1 at 4, 5, 17.)  He ordered the male child to the back of the apartment and then he sexually assaulted the 7-year-old female child.  (*Id.* at 17.)  He

forced her to remove her clothes and he raped her. (*Id.*) The record shows that Petitioner was HIV positive at the time of this crime and he knew about his medical condition. (*Id.*) As a result, on or about November 29, 1989 (as amended on January 21, 1992), the Superior Court for the District of Columbia sentenced Petitioner to 10-30 years for Burglary I, a consecutive 5-15 years for assault with intent to rape, and a consecutive 3-10 years for taking indecent liberties with a minor. (*Id.* at 1-2.) In total, Petitioner received a 55-year sentence for his crimes. (*Id.* at 5.)

**B.     Parole Consideration**

Petitioner's initial parole eligibility date was December 22, 2000. (*Id.*) Petitioner has had five parole hearings from March 2001 through April 2013 before the USPC, and was denied parole after each hearing. (*Id.* at 6-13, 17-19.)

Petitioner's most recent parole hearing before the USPC occurred on February 16, 2018. In the February 9, 2018 Parole Guideline Rehearing, the reviewer summarized the offenses for which Petitioner had been convicted, the victim information, and the previous actions of the USPC as it relates to its parole decisions. (Dkt. 12-1 at 17-19.) It was also noted that Petitioner's previous guideline range for parole grid score in 2013 was 0. (*Id.* at 19.) According to the Petitioner's most recent Bureau of Prisons ("BOP") progress report, dated December 17, 2017, Petitioner's adjustment had been without incident since 2013. (*Id.*) The review also included a mental health assessment and noted Petitioner would require chronic care in order for him to maintain stability in his mental health and behavioral functioning due to severe mental health issues. (*Id.*) The review also represented that Petitioner had no negative institutional behavior since his

last parole hearing, but noted that he needed separation at times due to erratic mental health issues. (*Id.*) The USPC reviewed his parole eligibility under the 1987 guidelines of the D.C. Board of Parole.[1] (*Id.* at 25.) The new guideline score issued for Petitioner was 0, for which score the guideline recommendation is that "[p]arole shall be granted at this rehearing with highest level of supervision." (*Id.* at 19.) The evaluation noted that the guideline score for Petitioner had been 0 since 2010, but that "the Commissioner has consistently denied parole due to the subject's risk to the community and his failure to complete Sex Offender Treatment to address his offense behavior and lessen that risk." (*Id.* at 20.)

At the parole hearing,[2] Petitioner's case manager claimed that Petitioner was not a management problem, kept to himself, had undergone a lot of programming, had maintained clear conduct since 2013, had also reached the advanced stage of available mental health workshops, had a good rapport with staff and inmates, and was otherwise doing well. (*Id.* at 21.) Portions of the mental health evaluation were read into the record, including that Petitioner was previously considered to participate in sex offender

---

[1]   The USPC "promulgated a rule requiring that the 1987 guidelines be applied to any offender who committed his crime between March 4, 1985, the effective date of the 1987 guidelines, and August 4, 1998, the last day the D.C. Board exercised authority before transfer to the USPC." *Shakir v. Fulwood*, 108 F. Supp. 3d 1, 3-4 (D.D.C. 2015) (citing 74 Fed. Reg. 58540 (Nov. 13, 2009) (final rule)); *see also* 28 C.F.R. § 2.80(o). As Petitioner indisputably falls into this category—his crime occurred in 1987—the 1987 guidelines would have applied to him. Petitioner does not dispute this in his Petition or motion materials.

[2]   The Court notes that Petitioner was represented by legal counsel during the 2018 parole proceedings. (Dkt. 12-1 at 21.)

treatment but at the time, the treatment team did not consider his mental health stable enough for him to be transferred to a mainline institution for the program. (*Id.*) Referring Petitioner to a program was not further addressed in the most recent report submitted to the parole board mainly because this had not been a focus of Petitioner's current treatment plan, and he had not had ongoing concerns of sexual misconduct. (*Id.*) Following the hearing, the examiner reviewed an updated mental health evaluation, which evidenced a relatively consistent stability in Petitioner's mental health, but did not indicate that he was ever referred to participate in sex offender treatment as a result. (*Id.* at 22.)

When asked by the hearing examiner about his conviction for raping a 7-year-old girl, Petitioner stated:

> [H]e was under the influence of PCP, cocaine, marijuana and alcohol at the time of the offense. The subject said that he had been banging out and using drugs with the child's mother [ ]. He said that at some point, she had to go somewhere so she gave him her address and told him to go there. The subject said Ms. [ ] did that despite having just met him that day. The subject said that when he arrived at the house, Ms. [ ]'s son let him in after telling him, "Your mom said it was cool if I came over." The subject denied breaking forcing [sic] his way into the apartment. The subject said the little girl was asleep on the couch when he got there.
>
> The subject went on to say that he went to use the bathroom and then ''had his pants down from going to the bathroom.'' The subject denied ever getting on top of the girl or raping her but said he asked her, "Do you want to make love?" The subject then said that "four guys came into the apartment and beat him up" but said he didn't know why. The subject denied that the child was crying out or that he harmed her in any way. The subject said, "I am not attracted to children. I think it was the drugs." The subject also said that he did not know he was HIV positive at the time of these events but only found out later.

(*Id.* at 22-23.)

4

The hearing examiner noted that the present guideline scores still indicated that parole should granted with the highest level of supervision. (*Id.* at 23.) However, the hearing examiner recommended denying Petitioner parole. (*Id.* at 23-24.)

On March 8, 2018, the USPC issued an order denying Petitioner parole, despite his guideline score, based on the following:

> After consideration of all factors and information presented, a departure from the guidelines at this consideration is warranted because you are a more serious risk than indicated by your grid score for the following reasons: Your offense involved the forced entry of a residence and subsequent rape of a 7-year-old girl. You continue to minimize your behavior and display lack of insight into your brutally violent offense. You have not engaged in sex offender treatment or any other programming which specifically address the nature of your child sex offense, thereby reducing the risk that you would return to similar behavior if released. The Commission recommends that you enter and complete sex offender treatment and/or the BOP provide documentation that you have been fully evaluated for that program and found ineligible. If treatment providers determine that you are not suitable for residential sex offender treatment, it is recommended that you participate in other offense-specific programs which might reduce your risk of re-offense.

(*Id.* at 25.)

Petitioner is presently incarcerated at the Federal Medical Center, Rochester Minnesota ("FMC-Rochester"). (Dkt. 1; Dkt. 12-1 at 17.)

**B.    Arguments Set Forth in the Petition and Motions**

The Petition challenges the 2018 USPC decision denying him parole. (Dkt. 1 at 2.) The challenge to this decision by Petitioner is a "[l]ack of Justification for Parole Denial." (*Id.* at 6; *see also* Dkt. 1-1 at 2.) According to Petitioner the USPC's decision denying him parole was not justified because:

> [H]e has an impeccable record of maintaining good behavior, respect towards the: staff, the co-existent of companionship with other inmates and that he

5

      has maintained a good work history throughout his incarceration in the Bureau of Prisons and that he has received over 20 certificates of completed programming while in the prison system since his sentencing. [Petitioner], has completed Anger Management group, the Commitment groups, Drug and Alcohol rehabilitation programs and several other programs directed by the staff which are verified by the medical staff. [Petitioner], has not suffered from depression nor distress, his temper is controlled and he has been medically compliant during his incarceration. [Petitioner], maintains good health and good hygiene and he is respected and loved within the community and in the prison system. [Petitioner], has reached levels in religion as high as being the IMAM of the Sunni Muslim community within the prison system and he is currently the MAHDI of the Rochester Federal Medical Center's Sunni Muslim community. There is a loving family and a comradieria of friends who await [Petitioner's] release from the Bureau of Prisons.

(Dkt. 1-1 at 2.)

In the Request for Relief, the Petitioner seeks parole as matter of due process of the law of the First, Fifth, and Fourteenth Constitutional Amendments. (Dkt. 1 at 8; Dkt. 1-1 at 3-4.) Petitioner raises essentially the same arguments in his motion for summary judgment. (Dkt. 4.)

In his April 22, 2012 Motion for Summary Judgment as matter of default, Petitioner argues that his Petition is uncontested, and default should be entered because Respondent did not respond to his March 13, 2019 Petition within 30 days. (Dkt. 6.)

Respondent contends that the Petition and related Motion for Summary Judgment should be denied, as the Court does not have the requisite authority to review the merits of the USPC's decision denying Petitioner parole. (Dkt. 11 at 3-8.) In addition, Respondent argues that he is not in default because the Court had not yet issued its order requiring Respondent to answer to the Petition at the time of Petitioner's Motion because Petitioner had not yet paid his filing fee, as required by this Court. (Dkt. 8.)

6

## II.  ANALYSIS WITH RESPECT TO THE PETITION AND MOTION FOR SUMMARY JUDGMENT

"Writs of habeas corpus may be granted by the Supreme Court . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

### A.  Petitioner's Challenge as a D.C. Code Offender of the USPC's Denial of Parole Based on a Lack of Justification

On August 5, 1997, Congress enacted the National Capital Revitalization and Self–Government Improvement Act, Pub. L. No. 105-33, § 11,231, 111 Stat. 251 (1997) ("Revitalization Act"). "'The Revitalization Act abolished the D.C. Parole Board and directed the USPC to conduct parole hearings for D.C. Code offenders **pursuant to the parole laws and regulations of the District of Columbia**.'" *Fisher v. Fulwood*, 774 F. Supp. 2d 54, 55-56 (D.D.C. 2011) (emphasis added) (quoting *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008) (internal citations and quotation marks omitted)); *see also* D.C. Code § 24-131(c) ("The Parole Commission shall exercise the authority vested in it by this section pursuant to the parole laws and regulations of the District of Columbia . . . ."). Under District of Columbia law, the legal standard for parole is as follows:

> Whenever it shall appear to the United States Parole Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission **may** authorize his or her release on parole upon such terms and conditions as the Commission shall from time to time prescribe.

7

D.C. Code § 24-404(a) (emphasis added).

The statute's use of the word "may" supports a finding that the statute is "phrased 'in discretionary terms.'" *Bailey v. Fulwood*, 793 F.3d 127, 132-33 (D.C. Cir. 2015) (quoting *McRae v. Hyman*, 667 A.2d 1356, 1360 (D.C. 1995)). Indeed, courts have held that given the complete discretion to determine when a prisoner is suitable for release, courts cannot review the merits of the USPC's decision to deny parole. *See, e.g.*, *Bogan v. District of Columbia Bd. of Parole*, 749 A.2d 127, 129 (D.C. 2000) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision."); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. 1996) ("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision.") (quotation marks and citations omitted); *Jones v. Braxton*, 647 A.2d 1116, 1117 (D.C. Ct. App. 1994) (per curiam) (merits of decision denying parole not judicially reviewable); *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. Ct. App. 1993) ("On a petition for writ of habeas corpus, this court does not review the merits of the D.C. Parole Board's decision to revoke parole, but only whether the plaintiff has been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion.") (cleaned up). In sum, this Court's review of the USPC's parole decision is limited to a review of the procedures

8

used by the Board in reaching its decision, which Petitioner does not challenge, and not the merits of the decision.[3]

"In turn, the 1987 Guidelines 'incorporate this discretionary approach,' . . . , and set forth a system 'to guide the Board in making the decision whether to grant or deny the parole'—not to limit it. . . . ." *Bailey*, 793 F.3d at 133 (quoting *McRae*, 667 A.2d at 1359-60)).  The 1987 Guidelines provide that the Board may "waive the SFS and pre and post incarceration factors . . . to grant or deny parole." 28 D.C.M.R. § 204.22.  Courts that have examined the numerical system under the 1987 guidelines "have held that, when the Commission applies the 1987 guidelines, it can 'depart from the guidelines' numerical system' anytime it wishes, 'as long as it 'specifies in writing those factors which it used.'" *Ford v. Massarone*, 902 F.3d 309, 321 (D.C. Cir. 2018) (quoting *Bailey*, 793 F.3d at 132, quoting *McRae*, 667 A.2d at 1360) (cleaned up).  Here, the USPC set forth its reasons for the departing from the numerical guideline recommendation of parole: (1) Petitioner's offense involved the forced entry of a residence and subsequent rape of a 7-year-old girl; (2) his continuing to minimize his behavior and displaying lack of insight into the violent offense; (3) and the fact that he had not undergone or been evaluated for sex offender treatment or other related

---

[3] While it is not clear, it appears that Petitioner may be asserting that he should be granted parole in accordance with 28 C.F.R. §§ 2.20-2.28. (Dkt. 1-1 at 1; Dkt. 4 at 2.) However, Petitioner does not set forth what procedure(s) he was denied, if any, under these regulations, and ignores the fact that a different subpart of the Federal Regulations governs the USPC, in part, with respect to D.C. Code offenders, as well as the parole laws and regulations of the District of Columbia.  *See* 28 C.F.R. § 2.70; D.C. Code § 24-131(c).

programming.  (Dkt. 12-1 at 25.)  Given that the USPC set forth its reasoning in writing, it committed no error in deviating from the 1987 guidelines' numerical system.

As to the factors considered in making a departure from the 1987 guidelines' numerical system, courts have concluded that the Parole Commission "can use the nature of a D.C. prisoner's conviction as a basis for exceeding parole guidelines, even if the conviction was used in his sentence computation pursuant to the guidelines." *Smith v. U. S. Parole Comm'n*, No. 3:CV-14-597, 2018 WL 4929205, at *3-4 (M.D. Pa. Oct. 11, 2018) (citing *Muhammad v. Mendez*, 200 F. Supp. 2d 466, 473 (M.D. Pa. 2002); *Jennings v. Hogsten*, 2008 WL 191483, at *4-5 (M.D. Pa. Jan. 22, 2008)); *see also Ellis v. District of Columbia*, 84 F.3d 1413, 1416 (D.C. Cir. 1996).  Further, needed involvement in institutional programming or rehabilitation services may be properly considered when making a parole decision for a District of Columbia offender.  *See Ellis*, 84 F.3d at 1416 n.3.  The Court acknowledges that at least one Court has concluded that "[t]he 1987 Regulations presume that the minimum sentence imposed by the sentencing court appropriately accounts for a parole candidate's offense severity and accountability and that the parole decision should be limited to consideration of the offender's risk of recidivism and institutional conduct." *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 88 (D.D.C. 2008).  That said, "[n]otwithstanding any incorrect mentioning of Petitioner's refusal to accept responsibility for his criminal conduct, the Parole Commission cited permissible and legitimate reasons for denying parole, namely the failure to participate in relevant sex offender programming and the nature of his violent offenses.  Those factors were properly considered by the Parole Commission and constituted a rational basis for the

conclusion that Petitioner posed a risk to the community if released."[4] *Smith*, 2018 WL 4929205, at *4.

**B.     Petitioner's Due Process Challenge**

Petitioner asserts, in a conclusionary manner, that the Petition should be granted in accordance with "Due Process of Law" under First, Fifth, and Fourteenth Amendments. (Dkt. 1-1 at 4; Dkt. 4 at 2.)  "'To trigger the due process clause under the circumstances presented, plaintiff must first identify a protected liberty interest, but it is established that D.C. prisoners do not have a constitutionally protected liberty interest in being released to parole.'" *Rious v. U.S. Parole Comm'n*, 183 F. Supp. 3d 170, 173 (D.D.C. 2016) (quoting *Johnson v. District of Columbia*, 67 F. Supp. 3d 157, 164 (D.D.C. 2014), *aff'd*, 927 F.3d 539 (D.C. Cir. 2019), citing *Ellis*, 84 F.3d at 1415 ("the Constitution itself does not create any liberty interest in parole," and "such an interest must emanate from state law, or in this case, District of Columbia law") (citation omitted); *see also Redmond v. United States Parole Comm'n*, No. CV 18-2214 (CKK), 2019 WL 4194794, at *4 (D.D.C. Sept. 4, 2019); *Boling v. United States Parole Comm'n*, No. 17-5285, 2018 WL 6721354, at *1 (D.C. Cir. Dec. 19, 2018), *cert. denied*, 140 S. Ct. 268 (2019) ("due process claim fails because neither the Constitution nor D.C. law creates a due process liberty interest in parole") (citing *Ellis*, 84 F.3d at 1415; D.C. Code § 24-404).

---

[4]     In any event, the fact that Petitioner denied that he harmed the child that he raped is arguably relevant to the risk of recidivism by Petitioner, especially where he has not received any sex-offender programming.

11

Because neither the Constitution nor D.C. law creates a due process liberty interest in parole, Petitioner's due process challenge related to not receiving parole from the USPC fails.[5]

**C.    Conclusion**

For all of the reasons stated forth above, the Petition and Petitioner's Motion for Summary Judgment should be denied.

### III.    ANALYSIS WITH RESPECT MOTION FOR DEFAULT

As set forth above, in his Motion for Summary Judgment as matter of default, Petitioner argues that his Petition is uncontested, and default should be entered because Respondent did not respond to his March 13, 2019 Petition within 30 days.  (Dkt. 6.) This motion is without merit.

---

[5]    To the extent that Petitioner is making a substantive due process claim it too fails. "To establish a substantive due process violation, the [Petitioner] must demonstrate that a fundamental right was violated and that [the Respondent's] conduct shocks the conscience." *Folkers v. City of Waverly, Ia.*, 707 F.3d 975, 980 (8th Cir. 2013); *see also Stoddard v. Wynn*, 68 F. Supp. 3d 104, 113 (D.D.C. 2014) (quoting *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403-04 (D.C. Cir. 2006) ("To state a substantive due process claim, a plaintiff must assert that a government official was so 'deliberately indifferent' to his constitutional rights that the official's conduct 'shocks the conscience.'").  "Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise."  *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012); *see also Estate of Phillips*, 455 F.3d at 403 (citation omitted). "The sort of behavior [Petitioner] alleges the Commission engaged in, such as the failure to follow internal regulations and the unjustified denial of parole, does not meet that standard."  *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 26 (D.D.C. 2018).

As it pertains to Section 2241 petitions, a "respondent is not required to answer the petition unless a judge so orders." Rules Governing Section 2254, Rule 5.[6]

Here, Respondent served and filed his response to the Petition on June 17, 2019, in accordance with this Court's May 16, 2019 Order requiring Respondent to file a response within 30 days of the Order. (Dkts. 10, 11.) The Court only issued an Order to respond after Petitioner paid his filing fee on May 10, 2019, as required by its April 17, 2019 Order. (Dkts. 5, 10.)

Accordingly, the Court recommends Petitioner's Motion for Summary Judgment as matter of default be denied.

---

[6] "Although the Rules Governing Section 2254 Cases are most directly applicable to habeas petitions filed by state prisoners pursuant to 28 U.S.C. § 2254, they also may be applied to habeas cases brought under 28 U.S.C. § 2241." *Spencer v. Marques*, No. 19-CV-94 (PJS/SER), 2019 WL 3893025, at *2 (D. Minn. July 17, 2019), *R&R adopted*, 2019 WL 3890840 (D. Minn. Aug. 19, 2019) (citing Rule 1(b); *Mickelson v. United States*, Civil No. 01-1750 (JRT/SRN), 2002 WL 31045849 at *2 (D. Minn. 2002)).

## IV. RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. S.M.A.'s Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**. This Petition should be **DISMISSED WITH PREJUDICE**.

2. S.M.A.'s Motion for Summary Judgment (Dkt. 4) be **DENIED**.

3. S.M.A.'s Motion for Summary Judgment as of Default (Dkt. 6) be **DENIED**.

DATED: January 14, 2020                 *s/Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).